UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MICHAEL K. HARRIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:11-CV-140 JAR ) |
| MICHAEL J. ASTRUE, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Michael Harris's application for a period of disability and Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-405, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383. Harris alleges mental and physical disability due to post traumatic stress disorder ("PTSD"), arthritis, disc fusion, knee problems, diabetes, plantar fasciitis, tinnitus, hearing loss, sinusitis, irritable bowel syndrome, hernia, right rotator cuff injury. (Tr. 258.). Harris filed a Brief in Support of the Complaint. (Doc. 15.) Defendant filed a Brief in Support of the Answer. (Doc. 19.)

**I. PROCEDURAL HISTORY**

On October 23, 2009, Scott filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Tr. 156-172.) In an initial determination, the Social Security Administration ("SSA") denied both claims. (Tr. 91-92, 94-106.) Harris's claim for SSI was denied, because Harris had too much income to

be eligible for SSI and his claim for DIB was denied on a finding of no disability under the Social Security Act. *Id.* Harris filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 109-110.) The SSA granted Harris's request and the hearing took place on June 21, 2010. (Tr. 121-127, 30-80.) On July 13, 2010, the ALJ issued a written decision upholding the denial of benefits. (Tr. 11-19.) On June 10, 2011, the Appeals Council denied Scott's request for further review after considering additional evidence. (Tr. 1-3.) Thus, the ALJ's decision stands as the Commissioner's final decision. Harris filed this appeal on August 3, 2011.

## II. ADMINISTRATIVE RECORD

### A. Hearing Testimony

On June 21, 2010, the ALJ held a hearing. (Tr. 25-90.) Harris and vocational expert ("VE") Darryl Taylor testified at the hearing. Harris was represented by counsel.

#### 1. Claimant's Testimony

Harris testified that he is married with four children. (Tr. 31.) Harris stated that he was honorably discharged from the Army National Guard after 23 years of service in January 2007. (Tr. 32, 36.) Harris testified that his sources of income include $2,900.00 in Veterans Affairs disability benefits and $1,600.00 in school teacher retirement benefits. (Tr. 32-33.) Harris stated that he has an undergraduate degree in social work and a master's degree in human services administration. (Tr. 33.)

Harris testified that he last worked as a placement coordinator in September 2009. (Tr. 34.) Harris stated that as a placement coordinator he prepared follow-up reports for kids who graduated from the high school or the corps technology center. (Tr. 35.) His work as a placement coordinator involved making phone calls, visiting homes, contacting

the kids' friends and relatives for an annual report. (Tr. 35.) Harris testified that he used computers at that job. (Tr. 35.)

Harris testified that he was a placement coordinator for eleven years, including one year when he served in Iraq. (Tr. 38.) Harris stated that the heaviest weight limit in that position was approximately fifteen pounds. (Tr. 38.) Harris also testified that he worked as a case manager for two different places- Bootheel Counseling Center and the community counseling center in Cape Girardeau, Missouri. (Tr. 38-39.) Harris stated that his job as a case manager "didn't really require any lifting." (Tr. 39.) Harris testified that he also worked as a project manager at Southeast Missouri State University supervising the Americorp program and its participants. (Tr. 39.) Harris stated that seventy-five pounds was probably the heaviest weight lifted in that position.

Harris testified that he stopped working because he had continued problems with his back, knee, and shoulder. (Tr. 35.) He also testified that it became difficult for him to use his hand typing. (Tr. 35.) Harris testified that since September 8, 2009, he has not made any attempts to put in applications for work elsewhere. (Tr. 35-36.) He also stated that he worked as a project assist, which involved educating people on the harmful effects of smoking. (Tr. 40.) Harris stated he could not recall the heaviest amount lifted at that position.

Harris stated that his daily routine starts with taking his medication and includes either sitting around the house or visiting his dad for varying amounts of time, and then he returns home. (Tr. 41-42.) Harris testified that he served on the city council until April 2010. (Tr. 42, 51.) Harris testified that he does not cook, do laundry, load or unload the dishwasher, vacuum, sweep, or mop. (Tr. 42-43.) He stated that he carries

3

groceries depending on their weight. (Tr. 44.) He stated that he is able to make a sandwich for himself and fold clothes. (Tr. 50-51.) He also stated that he drives and shops. (Tr. 42-43, 51.) Harris testified that he has friends and keeps in contact with them by telephone. (Tr. 44.) Harris also testified that he gets along with his family and attends weekly Lions Club luncheons and church. (Tr. 44-45.) Harris stated that he watches a lot of television, but does not read, go out on the weekends or pull weeds, hoe, or plant in the garden. (Tr. 45-46.) Harris stated that he does not do any car repairs or participate in any hobbies. (Tr. 46.) Harris also stated that he has problems taking a shower or bath. (Tr. 46.) Harris testified that he smokes five cigarettes per day, but does not drink. (Tr. 46.) At the time of the hearing, Harris testified that he was taking Gabapentin for pain sleep, and anxiety; Hydrocodone for pain; Omeprazole for acid reflux; Cyclobenzaprine and Peroxin for muscle relaxation; Lisinopril and Norvasc for blood pressure, Ambien for sleep, and medications to stimulate bowel movements. (Tr. 46-49, 58.) Harris stated that the Ambien does a good job, but the other medications do not work. (Tr. 47-49.) Harris also stated that the side effects of his medication include dry mouth and makes him feel over medicated and hung over. (Tr. 49, 77.) Harris testified that the hang over effect "really doesn't wear off." (Tr. 77.)

  Harris testified that he has back pain at the level of eight on a scale of one to ten, with ten constituting pain so bad it requires an emergency room visit. (Tr. 52.) Harris also testified that he was told that he has arthritis in his shoulder and back. (Tr. 52.) Harris stated that he had surgery on both his shoulders, including right rotator cup surgery and his back. (Tr. 53, 56.) Harris reported that he is in physical therapy for his shoulder, but has been told he needs to have another surgery. (Tr. 56.) Harris also

4

testified that he has pain in his shoulder and can use his right arm to a limited degree. (Tr. 53-54.) Harris also testified that he has diabetes, but is not on any medication for it. (Tr. 54.) Harris stated that "they want me to watch what I eat, control it." (Tr. 54.) Harris testified that he has plantar fasciitis, which causes his feet to hurt. (Tr. 54.) He stated that he also has a 10% hearing loss in his right ear and tinnitus. (Tr. 55.) Harris testified that he also has irritable bowel syndrome and a hernia. (Tr. 55.)

Harris testified that he has PTSD and anxiety, which causes him to have bad memories and recurring nightmares about what happened in Iraq. (Tr. 57-58.) Harris also testified that he has felt suicidal, but has not made any attempts on his life. (Tr. 59.) Harris testified that while in Iraq, he encountered constant mortar fire and sniper fire. (Tr. 57.) He stated that he see Dr. Sani regarding his mental health every six months. (Tr. 58.)

Harris testified that he can stand up for about half an hour, if he can find something to lean on with interruptions and walk about "half a football field" before he starts experiencing any problems. (Tr. 59, 75.) Harris stated that he can sit okay, but it depends upon the chair. (Tr. 59.) Harris also testified that he can lift about twenty-five pounds, but it depends on how his arm is doing. (Tr. 60.) Harris affirmed that he had problems with bending, stooping, crouching, kneeling, and crawling, because of pain in his knees, thighs, and back. (Tr. 60.) Harris also testified that he tries to avoid steps as much as possible. (Tr. 60.)

Harris testified that he was had neck, back, and shoulder pain during the hearing and it caused him to perspire. (Tr. 61.) Harris agreed that the pain interfered with his ability to focus and remain concentrated during the hearing. (Tr. 61.) Harris testified that

he currently felt pain running down his left leg down to his feet. (Tr. 62.) Harris stated that his right hand was tingling and felt numb and that the pain radiates from his right hand through his bicep into his shoulder and neck. (Tr. 66.) Harris stated that the pain makes it more difficult for him to go through the day and his day to day routine. (Tr. 67-68.) Harris also stated that he has had this pain constantly every day since his first shoulder surgery. (Tr. 66-67.) Harris rated his shoulder pain as eight or nine out of ten. (Tr. 62-63.) Harris also stated that he had been released from physical therapy and referred to a surgeon after three months because he was not showing any progress. (Tr. 67.) Harris testified that he could not work at any of his jobs from the past fifteen years with the right arm pain, because the jobs require a lot of writing. (Tr. 68.)

Harris stated that he has headaches every day that measure a six or seven on a pain scale of one to ten. (Tr. 71.) Harris also stated that he is not taking medication specifically for the headache pain. (Tr. 71.) Harris testified that talking made his headaches worse and during the hearing he had a headache rated seven out of ten on the pain scale. (Tr. 72.) Harris also stated that the headaches caused problems with light, but not nausea. (Tr. 72.)

Harris testified that he has peripheral neuropathy in his toes, feet, legs, and hands. (Tr. 73.) Harris also testified that the neuropathy interfered with his ability to stand or walk, which occasionally caused him to use a cane. (Tr. 73.) Harris testified that he also has ankle pain due to cartilage being torn and rated that pain at a seven out ten on the pain scale. (Tr. 76.) Harris stated that he used pillows almost nightly to support his ankle. (Tr. 76.)

Harris testified that with his medication, his mind is not sharp so he would not be comfortable engaging with the public. (Tr. 79.) Harris also testified that he has had moments of despair and that his primary care providers told him that he was depressed. (Tr. 80.) Harris testified that he sits on the edge of the bed or lays in the bed most of the day and reported that he is more comfortable laying down. (Tr. 63.) Harris testified that he sleeps approximately six hours during the day and twelve hours overnight. (Tr. 63.) Harris stated that he could not sit down at a desk very long, especially doing work with his hands due to constant pain. (Tr. 64.) Harris stated that the heaviest item he could lift with his right hand was milk and he hardly uses his left hand. (Tr. 66.) Harris stated that he could probably take notes for less than an hour with his right hand before needing a break. (Tr. 68.)

Harris testified that he believes that his neck pain would interfere with his driving, because turning his neck is difficult. (Tr. 69.) Harris also testified that his neck condition has worsened with time. (Tr. 70.) Harris stated that he has two bulging discs in his neck and in his spine, along with ulner nerve compression. (Tr. 69-70.)

### 2. VE's Darryl Taylor's Testimony

Darryl Taylor, a VE, testified that Harris's work as a case manager and placement coordinator were both classified by the *Dictionary of Occupational Titles* ("DOT") as sedentary, skilled work. (Tr. 82.). The VE testified that Harris's job as a project manager was light exertional and skilled work. (Tr. 82.)

The ALJ posed the following hypothetical to the VE, which provided:'

> Assume a person at the age of 49, with a high school-plus education, and past relevant work experience that you have identified. Please assume that I would find this person capable of performing the exertional demands of light work, as defined in the social security regulations. Specifically, the

> person can lift, carry, push, pull, 20 pounds occasionally, 10 pounds frequently, sit, stand, walk each six out of eight for a total of eight out of eight. I would limit the person to occasional climb, balance, stoop, kneel, or crawl, no crouch, occasional use of the right upper extremity for reaching including overhead, and no concentrated exposure to extreme cold, extreme heat, wetness, humidity, [inaudible], vibration, fumes, or odors, dust, gases, poor ventilation, machinery and [inaudible]. Per that hypothetical, would there be transferrable work skills?

(Tr. 83-84.) The VE responded that there would be transferrable work skills of clerical, filing, utilization of computers, working with the public, and performing social service types of activities, and case management. (Tr. 84.) The VE stated that the restrictions would not affect the performance of Harris's past relevant work and Harris could perform all of his past relevant work. (Tr. 84.) The VE testified that the jobs he identified would require remaining seated at a desk behind a computer, walking, completing paperwork, correspondence via e-mail, attendance, strong concentration skills, and focus (Tr. 85-86.). The VE also stated that a person would be terminated if he needed to lie down periodically during the day. (Tr. 85.)

**B.   Medical Records**

Harris has an extensive medical record. Some of the most relevant portions are summarized below.

On June 11, 2007, Michael J. Milne, M.D., performed right shoulder surgery on Harris. (Tr. 325-327.) Dr. Milne noted that Harris had right shoulder impingement, right shoulder AC joint arthsosis, right shoulder rotator cuff partial thickness tear, and a right shoulder SLAP tear. (Tr. 325.) Dr. Milne noted that Harris tolerated the procedure well and Harris was referred to start physical therapy within 48 hours. (Tr. 327.)

On March 25, 2008, Harris visited Dr. Milne for a follow-up visit regarding right shoulder surgery. (Tr. 321.) Dr. Milne noted that Harris was nine months status post

right shoulder SAD, DCR, rotator cuff debridement, and SLAP repair. (Tr. 321.) Harris reported that he had a nagging pain in his shoulder that "usually goes away after warming it up. (Tr. 321.) Harris also reported that his daily activities were unlimited, but he had discomfort in his shoulder. (Tr. 321.) Harris reported that he had not performed any home exercises on a regular basis in quite some time. (Tr. 321.) Dr. Milne determined that Harris was suffering from some functional impingement and discussed a home exercise program with Harris. (Tr. 321.)

On April 17, 2008, Harris visited Kee B. Park, M.D., with complaints of back and right leg pain. (Tr. 411-414.) Harris reported that he had had back pain for three years and had been treated with physical therapy and extensive pain management without any significant improvement. (Tr. 411.) Harris reported that the pain is in his back and goes down to his right buttock and leg. (Tr. 411.) Harris also reported that he was referred to Dr. Park because an evaluation showed that he had a positive discogram with tear and herniation at the L5-S1 level. (Tr. 411.) Dr. Park noted that Harris had a 5/5 motor strength throughout with a normal gait and station. (Tr. 413.) Dr. Park indicated that surgery would be scheduled due to the physical therapy and pain management being unsuccessful. (Tr. 413.)

On June 13, 2008, Dr. Park performed surgery on Harris's back due to L5-S1 degenerative disc disease and herniation to the right side. (Tr. 418-420.) On July 9, 2008, Harris visited Dr. Park for a follow-up visit. (Tr. 416.) Dr. Park noted that Harris's x-rays were stable and his incision was clean. (Tr. 416.) Dr. Park stated that Harris's symptoms improved a little bit. (Tr. 416.) On September 25, 2008, Harris returned to Dr. Park for a follow-up visit. (Tr. 417.) A CT scan of the lumbar spine

showed that there was a good fusion and placement of the rods and screws as a result of the surgery. (Tr. 417.) Dr. Park then recommended that Harris participate in physical therapy for 4-6 weeks. (Tr. 417.)

On December 23, 2008, Donald S. Piland, M.D., performed an endoscopy[1] of Harris's esophagus, stomach, and duodenum.[2] (Tr. 660.) The review of the esophagus and duodenum were normal. (Tr. 660.) The endoscopy of the stomach showed mild diffuse nonerosive gastritis.[3]

On January 12, 2010, James Spence, Ph.D., prepared a Psychiatric Review Technique regarding Harris. (Tr. 702-713.) Based on his review of Harris's medical records and communications with Harris's former supervisor, Dr. Spence determined that Harris has a history of PTSD. (Tr. 706.) Dr. Spence also determined that Harris had mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. (Tr. 710.) Dr. Spence noted that Harris did not have any repeated episodes of decompensation of extended duration. (Tr. 710.) Dr. Smith concluded that Harris's alleged impairment of PTSD is non-severe.

On January 29, 2010, John Marshall Jung, M.D., completed a Physical Residual Functional Capacity Assessment for Harris. (Tr. 728-734.) Dr. Jung determined that Harris could occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; stand and/or walk about six hours in an eight hour workday; and sit with normal breaks about 6 hours in an eight hour workday. (Tr. 729.) Dr. Jung determined that Harris's ability to push and/or pull was unlimited. (Tr. 729.) Dr. Jung indicated that Harris was

---

[1] Endoscopy is the examination of the interior of a canal by instrument. Stedman's Medical Dictionary 594 (27th ed. 2000).
[2] Duodenum is the first division of the small intestine. Stedman's Medical Dictionary 547 (27th ed. 2000).
[3] Gastritis means inflammation. Stedman's Medical Dictionary 731 (27th ed. 2000).

occasionally limited in climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 730.) Dr. Jung opined that Harris had no manipulative, visual, or communicative limitations. (Tr. 731.) Dr. Jung also determined that Harris should avoid concentrated exposure to extreme cold; extreme heat; wetness; humidity; noise; vibration; fumes, odors, dusts, gases, poor ventilation; and hazards. (Tr. 732.) Dr. Jung also found that Harris's statements of pain were less than credible. (Tr. 730.)

On February 24, 2010, the Department of Veterans Affairs awarded Harris disability benefits due to peripheral neuropathy, right and left lower extremity, degenerative disc disease of the lumbar spine, post-traumatic stress disorder, cervical spine arthritis, and diabetes mellitus. (Tr. 740-44.)

### III.    ALJ's Decision

The ALJ determined that Harris met the special earnings requirements of the Act as of September 9, 2009, the alleged onset of disability, that he continued to meet them through the date of the decision, and that Harris was not engaged in substantial gainful activity since September 9, 2009. (Tr. 18.) The ALJ also determined that Harris had the following severe impairments: status-post microdiscectomy at L5-S1 with other degenerative disc disease of the lumbosacral spine, mild degenerative disc disease of the cervical spine, status post bilateral arthroscopic surgery of both shoulders, status-post arthroscopic surgery of the left knee, mild degenerative joint disease of both knees, bilateral plantar fasciitis, a mild hearing loss with tinnitus, hypertention, gastroesophageal reflux disease, diabetes mellitus, and post-traumatic stress disorder controlled by medication. *Id.* The ALJ concluded, however, that Harris does not have an impairment or combination of impairments that meets or medically equals one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.) The ALJ also found that Harris has the RFC to perform work except "probably lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally; crouching, doing more than occasional climbing, balancing, stooping, kneeling, or crawling; using the dominant right upper extremity for more than occasional overhead reaching; or having concentrated or excessive exposure to unprotected heights or dangerous moving machinery, vibrations, or dust, fumes, chemicals, temperature extremes, high humidity or dampness, and other typical allergens, pollutants and atmospheric irritants." (Tr. 18.) The ALJ determined that Harris had no credible, medically established mental or other nonexertional limitations. (Tr. 18.) The ALJ determined that Harris was able to perform past relevant work. Finally, the ALJ concluded that Harris has not been under a disability, as defined by the Social Security Act, through the date of the ALJ's decision. (Tr. 19.)

## IV.  Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 2542 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the

Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts when required which is based upon a proper hypothetical question.

*Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i)(1); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not

disabled. Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled. If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled. If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

## V.   DISCUSSION

Harris alleges two points of error in the ALJ's decision. First, Harris asserts that the ALJ's decision was not based on substantial evidence, because the decision was based in part on the ALJ's observations at the hearing, which contradict medical evidence and facts presented at the hearing. Second, Harris asserts that the ALJ's finding that he could perform light work with environmental limitations is not supported by competent and substantial evidence; therefore, the VE's testimony based upon those restrictions is not competent evidence. The Commissioner contends that the ALJ's decision appropriately considered credibility factors in evaluating Harris's subjective complaints and the

14

determination that Harris could perform his past relevant work was supported by substantial evidence.

### A.     Credibility Determination

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See, e.g., Battles v. Sullivan*, 992 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

*Id.* at 1322. An ALJ may consider his own observations of the claimant when determining credibility. *Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008). While the ALJ's observations cannot be the sole basis of his decision, it is not an error to include his observations as one of several factors. *Id.*

Plaintiff asserts that the ALJ improperly placed the crux of his decision on his observations of claimant during the hearing. Plaintiff contends that the ALJ's reliance on his observations was improper, because the hearing occurred by video conference and the ALJ's observations directly contradict the observations made by his attorney who was in

15

the room with Harris. Moreover, Harris states that the ALJ's observations are contradicted by the numerous allegations of pain documented in Harris's medical record. Harris cites to some of the numerous instances in the record where he reported pain to his physicians and treatment providers and his descriptions of his pain and abilities during his testimony at the hearing before the ALJ. (Pl.'s Br. 2-5.) The Commissioner contends that the ALJ made several findings regarding Harris's credibility in addition to his observations and those findings were supported by substantial evidence in the record as a whole.

A review of the ALJ's decision demonstrates that the ALJ identified several reasons for his determination that Harris's claims of chronic pain were not credible, in addition to his observations of Harris at the administrative hearing. First, the ALJ noted that Harris had a very good to excellent work record up to and including his amended alleged onset date of disability, which weighs in Harris's favor. (Tr. 13.) The ALJ also gave some weight to the award of disability benefits by the VA. (Tr. 13.) The ALJ correctly noted that the Social Security Administration is not bound by the VA's decision to award disability benefits. (Tr. 13.); *see Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) (the ALJ should consider the VA's finding of disability, but is not bound by the disability rating of another agency when evaluating whether claimant is disabled for purposes of social security benefits).

Next, the ALJ noted several factors that weighed against Harris's credibility. The ALJ noted that the bulk of the medical evidence covers a time period before Harris's amended alleged onset date of disability and Harris was gainfully employed throughout the time period. (Tr. 13.) The ALJ noted that the medical record showed follow-up

treatment for chronic conditions and other medical problems as they arose. (Tr. 13.) The ALJ determined that, although Harris was alleging chronic pain in his back, neck, and feet, the test results showed mild spondylosis without myelopathy, mild disc bulging, and mild bilateral degenerative arthritis, mild osteoarthritis. (Tr. 14.) The ALJ also noted that Harris had received outpatient counseling sessions by a mental health therapist, but his Global Assessment of Function ("GAF") score was no lower than 60, indicating only mild to moderate difficulty with social and occupational functioning. (Tr. 15.) The ALJ noted that there is no medical evidence to show that any of Harris's problems have worsened since September 9, 2009. (Tr. 16.)

The ALJ noted that no doctor had rendered a medical opinion that Harris was unable to perform any type of work. (Tr. 16) *See Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996) (lack of restrictions by treating physicians supports the ALJ's determination that plaintiff was not disabled). Further, the ALJ noted that no doctor placed any specific long-term restrictions on Harris's ability to stand, walk, bend, lift, or perform other exertional activities. (Tr. 16.) To the contrary, medial evidence shows that Harris was sent to physical therapy several times after he had surgery. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) ("A lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where, as here, the claimant's treating physicians are recommending increased physical exercise.") The ALJ also noted that any restrictions on Harris's daily activities were by choice and not because of any restrictions placed on him by his doctors. (Tr. 17.)

The ALJ's opinion demonstrates that the ALJ properly considered the *Polaski* factors in assessing Harris's credibility. Based on the administrative record and the

17

ALJ's analysis of Harris's credibility, the Court finds that the ALJ's credibility determination is supported by substantial evidence on the record as a whole.

### B. Past Relevant Work

Harris states that the ALJ's finding that he can perform light work with environmental limitations is not supported by competent and substantial evidence. Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)). RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545. The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[4] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC). An RFC determination made by an ALJ will be upheld if it is supported by

---

[4]A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

18

substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). The burden is on the claimant and not the Social Security Commissioner to prove the claimant's RFC. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2003).

The Court believes that the ALJ's decision was supported by substantial evidence. The ALJ's RFC finding is consistent with the psychological and physical assessments of Harris done by the state agency. (Tr. 702-713, 728-734.) The VE testified that based on the restrictions in the hypothetical, which followed the restrictions in the physical RFC assessment, Harris could return to his past relevant work. (Tr. 84.) In *Eichelberger v. Barnhart*, the court found that substantial evidence supported the ALJ's denial of benefits at step four where the claimant's subjective complaints had been discredited, no physician had placed significant work-related limitations on the claimant, and treatment notes indicated that the claimant had good strength in her shoulder. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

Here, Harris's subjective complaints have been discredited and no physician has placed work-related limitations on him. Further, Harris's physicians recommended physical therapy, which would increase his activity, not decrease it. *See Moore*, 572 F.3d at 524. And, as the burden to show he could not perform his past relevant work was on Harris, the adverse determination was a failure to carry that burden. *See Eichelberger*, 390 F.3d at 592.

Here, after reviewing all relevant evidence, the ALJ concluded that Harris has the RFC to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), with

the restrictions of not lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally; crouching, doing more than occasional climbing, balancing, stooping, kneeling, or crawling; using the dominant right upper extremity for more than occasional overhead reaching; or having concentrated or excessive exposure to unprotected heights or dangerous moving machinery, vibrations, or dust, fumes, chemicals, temperature extremes, high humidity or dampness, and other typical allergens, pollutants and atmospheric irritants.  The Court finds that the record as a whole supports this conclusion.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner denying Claimant's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-405 is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment on the Complaint for Judicial Review is entered in favor of Defendant and against Plaintiff. [ECF Nos. 1, 15]

Dated this 27th day of September, 2012.

                                                               JOHN A. ROSS
                                                                UNITED STATES DISTRICT JUDGE